UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

2005 JAN 27 P 4: 35

U.S. DISTRICT COURT
BRIDGEPORT, CONN

CLAUDIOUS CHANNER
Plaintiff,

vs.    Civil No. 3:00CV230(SRU)

RICHARD BLUMENTHAL et al
Defenfants.

_____/

## PLAINTIFF'S RULE 56(a) MOTION

Pursuant to the Federal Rules of Civil Procedures, Rule 56(a)2 Plaintiff set forth the following answer and opposition to the defendants City of Hartford Rule 56(a)2 Statement of Material Facts not indispute.

(1). Paragraph one of the City Statement of Facts is admitted.

(2). Paragraph two is admitted.

(3). Paragraph three is denied in that the Plaintiff has no knowledge of a written statement given to the Hartford Police Officers, during their arrest of the Plaintiff.

(4). Plaintiff will admit that the defendants did use excessive forece against him and obtain an oral confession.

(5). Paragraph five is admitted as true.

(6). Paragraph six is denied in that the Plaintiff was not using and carrying a weapon when he was arrested. See Exhibit -1

(7). Paragraph seven is admitted as true.

(8). Paragraph eight is admitted as true.

(9). Paragraph nine is accepted as true.

(10). Paragraph ten is accepted as true.

(11). Paragraph eleven is accepted as true.

(12). Paragraph twelve is admitted as a fact.

(13). Paragraph thirteen is admitted as true.

(14). Paragraph fourteen is accepted as true.

(15). Paragraph fifteen is accepted as true.

(16). The Plaintiff has no knowledge of the defendants claim made in paragraph sixteen and therefore, leave the defendants to their proof.

(17). Paragraph seventeen through nineteen is denied .

(18). Paragraph twenty through seven is admitted as true.

## STATEMENT OF MATERIAL FACT WHICH ARE INDISPUTE PURSUANT TO RULE 56(a)2

The Plaintiff was not served with a copy of the Magistrate recommended ruling as required by the rule of civil procudure, Rule 72, on or after August 24, 1992. Plaintiff was arrested without an arrest warrant and brought to 57 Weathersfield Ave, Apartmernt G-3, to conduct a search for items set forth in the City warrant.

The City was not a defendant to the Plaintiff 1991 civil rights action. Pursuant to Heck v. Humprhey 51 U.S. 477 (1994), the Plaintiff false arrest and false imprisonment claim were not ripe until June 17, 1998.

The Plaintiff was confined at a City jail in the City of Hartford, 177 Weston Street, Hartford.

The Plaintiff was concious at all time of his confinement and did not consent to his false arrest and false imprisonment.

The defendant City of Hartford did not have probable cause to arrest the Plaintiff before they discoverd the illegal substance in his Apartment.

The City knew or should have known that the applicable statute of limitation that govern a 42 U.S. C 1983 was three years, instead of the two years statute of limitation that is found in Conn. Gen. Stat. 52-584.

The City of Hartford knew or should have known that the statute of limitation was three years since 1980 but refused to applied the same to the Plaintiff suit. The City of Hartford knew or should have known that the second circuit court of Appeal had overturn its custom and practice of refusing to apply Conn. Gen. Stat. 52-577 to individual claim of wrong against the City but the City failed to notified the Plaintiff and others that were wrong by the City.

The City of Hartford and its Police Department who were represented by the law firm of Halloran and Sage, refused to notify the pro-se Plaintiff that their custom and practice of applying the wrong statute of limitation to individuals civil Rights suits were overturn by the Second Circuit Court of Appeals.

The Law firm of Halloran and Sage has been retained by the City in this suit

and has been so retained form 1991 to defend the City against any and all law suits. Wherefore, Halloran and Sage should have informed the City and the City should have advise its Attorneys to take the appropriate step to secure law and justice .

Recently the City settled a Law Suit with one Gilbert Rivera who was falsely imprisoned for murder . See the Hartford Courant article attached hereto. Whether the Second Circuit Court ruling in Lounsbury v. Jeffrie, 25 F.3d 131 (2nd Cir. 1994) should be applied retroactively to the Court 1992 decision.

Whether a copy of the Magistrate recommendation, dated August 24, 1992 was ever mailed to the Plaintiff.  Whether the Plaintiff should be held at fault for failure to file a response to a Magistrate recommendation that he did not receive over fourteenth years.  The res-judicata issues are indispute on whether the City could have been sued for false imprisonment in Channer 1.

Whether the Plaintiff knew or should have known that the Second Circuit court of Appeals had settled the split, on the residual statute in the State of Connecticut .  Whether the relief requested in Channer v. Keven Rowe, 3:96 Cv335 (AVC) should have been allow to go forward, under the language of Haines v. Kerner, and Heck v. Humphrey, 512 U.S 477 (1994).

Whether the City failure to sanction its employees erroneous application of its constitutional policies, lead to the Plaintiff's false imprisonment.  There are factual dispute as to whether the claims of false imprisonment become ripe for litigation on March 2, 1989 or on June 17, 1998.

There are factual dispute as to whether the Honorable Peter C. Dorsey , June 17, 1998  vacation of t he Plaintiff conviction and sentence, exposed the City to Civil

liability for the Plaintiff false imprisonment. Whether observing a defendant who was named in a search and seizure warrant, established probable cause for an arrest.

Whether observing a known drug dealer entering the Plaintiff's Apartment and staying for a few minutes and emerging a few minutes later is enough to establish probable casuse for the Plaintiff arerst. Whether the Affidavit to support probable cause was fabricated by the City and its Police Department, as a part of its contining scheme.

Whether probable cause does or does not exist is a material fact for the jury Illinois v. Gates, 462 U.S 213 (1983). Whether the City knew or should have known that its joint state and federal task force were fabricating information to secure a arrest warrants.

Based upon the forementioned statements and facts, Plaintiff declare that there are genuine issues of material facts which warrant a jury trial.

Respectfully submitted

Claudious W. Channer
PO. BOX 100
Somers, Ct 0607

## Certificate of Service

This is to certify that a true copy of the foregoing was mailed under the rules of Houston v. Lack, 487 U.S. 266 (1988) and Haines v. Kerner, 404 U.S 519 (1972) to Eric Daigle, One Goodwin Square 225 Asylum Street, Hartford, Ct. 06103; Assistant United State Attorney David Sheldon, esq. 157 Church Street, New Haven, Ct. 06510 and Assistant Attorney General Richard T. Biggar, Esq 110 Sherman Street, Hartford, Ct. 06105

on this _24_ day of _January_ 2004.

Respectfully Submitted

_____
Claudious W. Channer
P.O. Box 100
Somers, CT. 06071
#151418

# METRO HART

HARTFORD • WEST HARTFORD • BLOOMFIELD

# Civil Rights Probe Finds No Wrongdoing

## Man Falsely Charged With Homicide Pursu[es] $6 Million Lawsuit

By MATT BURGARD
COURANT STAFF WRITER

**HARTFORD**

A federal investigation to determine if a Hartford man's civil rights were violated when he was falsely charged in a 1997 homicide in Pope Park has been closed without any finding of criminal wrongdoing by the city detectives who arrested him.

Albert N. Moskowitz, chief of the U.S. Department of Justice's civil rights division, notified Gilberto Rivera's attorney this month that the investigation had been closed because no "prosecutable violation" had been found.

Despite the finding, Rivera will pursue a $6 million false-arrest lawsuit against the city, his attorney, James S. Brewer, said.

The investigation and lawsuit arose from a bizarre tug-of-war between the police department and the FBI, each of which charged a different suspect with killing gang leader Enrique "Rick the Ruler" Ramirez.

The FBI's suspect, 25-year-old Julio Ramos, eventually confessed to the killing in federal court and is serving a 24-year prison sentence. Charges against Rivera were dismissed several weeks later, but only after he had spent more than three months in jail awaiting trial.

The confession also exposed a territorial rift between Hartford police detectives and FBI agents assigned to help crack down on gang-related crime at the time. When FBI agents developed evidence linking Ramos to the killing, Hartford detectives ignored much of it and continued to pursue their case against Rivera, federal prosecutors announced at the time.

The Department of Justice's civil rights division opened its investigation into the conduct of Hartford police detectives after the conspiracy and murder charges against Rivera were dismissed in 1998.

A spokeswoman in the office of Kevin O'Connor, the U.S. Attorney for Connecticut, said Wednesday that the office has recused itself in the case and could not comment on the Justice Department's action. Moskowitz and other officials in the civil rights division were unavailable for comment.

Hartford police officials also declined comment, citing the ongoing lawsuit.

Even before this month's letter announcing an end to the investigation, Brewer had complained that the division was dragging its feet on the case.

"It is unfortunate that the Department of Justice has chosen to take sides with

PLEASE SEE RIVERA, PAGE B4

## Rivera
CONTINUED FROM PAGE B3

criminal police officers who have engaged in gross criminal misconduct," Brewer wrote in a letter to Moskowitz in June.

Wednesday, Brewer said he found it ironic that federal officials have found no criminal wrongdoing on the part of the same detectives who five years ago were accused of willfully undermining the FBI's case — first ones to decry the behavior of the city police detectives, and now they find no wrongdoing?," he said. "It's not consistent, and it's all because they're in collusion with each other."

Brewer said the lawsuit against the detectives who arrested Rivera, and department leadership at the time, recently received a boost when a federal court denied an effort to have the suit dismissed. The case is set to go to trial in federal court in Hartford on Nov. 11.

"In the end, the Hartford detectives didn't care so much about Gilberto Rivera; he was just a pawn for them to carry out their feud with the FBI," Brewer said.



Looking to spend quality time with your family this summer? the cl@ypen STOP



Hartford Police Department arrest/incident report (HPD Form #78 Rev. 12/85), page 1 of 2.

**Date of incident:** 3/2/89  **Time:** 1500  **Location:** 57 Wethersfield Ave.

**Suspect:** CHANNER, CLAUDIOUS — W/M/B — DOB 12/07/61 — Age 27 — 57 Wethersfield Ave.

**Charges:**
- Charge 1: POSS NARCOTICS (C) — 21a-279(a)
- Charge 2: POSS NARCO. W/INT SALE (9oz.) — 21a-278(a) — G-3
- Charge 3: WEAPON IN MOTOR VEHICLE — 29-38 — G-3
- Charge 5: THEFT OF FIREARM — 53a-212 — 21a-277(c)

**Property:**
- 1987 NISSAN PATHFINDER, CT reg. 932 FVD, color BURG., VIN JN8HD16Y4HW021957 — SEE SEARCH WARRANT RETURN FOR EVIDENCE SEIZED
- 1 COLT 45 CAL. AUTOMATIC MARK IV SERIES 80 SER# SF23620 — CLIP WITH 6 ROUNDS OF AMMUNITION

**Incident Details:**

THE UNDERSIGNED DETECTIVES ARE REGULAR MEMBERS OF THE HARTFORD POLICE DEPARTMENT WITH A COMBINED TOTAL OF 16 YEARS POLICE SERVICE AND EXPERIENCE. THAT DETECTIVES ARE PRESENTLY ASSIGNED TO THE VICE-AND-NARCOTICS-DIVISION-OF-THAT-DEPARTMENT, AND-HAVE INVESTIGATED NUMEROUS INCIDENTS OF THE TYPE SET FORTH BELOW: RESULTING IN THE SEIZURE OF LARGE QUANTITIES OF NARCOTICS WITH SUBSEQUENT ARRESTS AND CONVICTIONS OF PERPETRATORS.

THAT ON ABOVE DATE AT NOTED TIME, THE UNDERSIGNED, ALONG WITH OTHER MEMBERS OF THE HARTFORD POLICE DEPARTMENT NARCOTICS DIVISION DID PROCEED TO 57 WETHERSFIELD AVE. ARMED WITH A VALID SEARCH AND SEIZURE WARRANT FOR APARTMENT G-3, OCCUPIED BY A JAMACIAN MALE NAMED CLAUDIOUS CHANNER.

THAT AS THE UNDERSIGNED WERE ENTERING THE DRIVEWAY LEADING TO THE PARKING AREA OF SAID LOCATION THEY OBSERVED ACCUSED ATTEMPTING TO ENTER HIS VEHICLE (NOTED ABOVE); THAT ACCUSED WAS ORDERED AT GUNPOINT TO EXIT HIS VEHICLE, AT WHICH TIME HE WAS OBSERVED PLACING AN OBJECT UNDER THE FRONT DRIVER'S SEAT; THAT ACCUSED WAS PLACED UNDER CONTROL AT WHICH TIME ABOVE LISTED WEAPON, FULLY LOADED WAS OBSERVED IN PLAIN VIEW. WEAPON SECURED ALONG WITH ACCUSED BY DET. MERRITT AT THAT TIME.

THAT DET. PERODEAU, ALONG WITH AGENT JAMES MARKOWSKI OF OFFICE OF ALCOHOL TOBACCO AND FIRE- ARMS, PROCEEDED TO THE FIRST FLOOR APARTMENT

**Investigating Officer:** DET. MICHAEL PERODEAU — code 20508
**Assisting Officer:** DET. GREGORY MARK — code 49808

PAGE 1 OF 2 PAGES

PROSECUTOR REPORT ☒ SUPPLEMENT ☐ JUVENILE REFERRAL    SUPPLEMENT    CASE # 89-10858

**DETAILS**

G-3 OF THE TARGET LOCATION. THAT AFTER ANNOUNCING THEIR AUTHORITY AND INTENTIONS, HEARING NO RESPONSE FROM WITHIN, THE DOOR TO THE APARTMENT WAS FORCIBLY OPENED. THAT UPON ENTRY, NO OTHER PERSONS WERE PRESENT. SEARCH OF APARTMENT CONDUCTED AT THAT TIME. THAT SGT. CAGIANELLO SEARCHING THE BEDROOM DISCOVERED SECRETED IN THE REAR APOSTLERY OF A CAR SEAT: TWO LARGE ZIP LOCK BAGS, EACH CONTAINING WHITE POWDER/CAKE LIKE SUBSTANCE, AND A "COBRAY" M-11-9mm AUTOMATIC PISTOL SER NUMBER 88-0006206 , WITH CLIP CONTAINING 12 9mm ROUNDS OF AMMUNITION. THAT AGENT MARKOWSKI DISCOVERED 10 ROUNDS OF 45 CALIBER AMMUNITION IN A BOX UNDER THE LIVINGROOM COUCH. ALSO DISCOVERED BY AGENT MARKOWSKI WAS PROOF OF RESIDENCY AND IDENTIFI- CATION FOR ACCUSED CHANNER, IN BEDROOM NIGHTSTAND. DET. ELLIS DISCOVERED OHAUS TRIPLE BEAM WEIGHING SCALE IN HALLWAY CLOSET. DET. WOLF DISCOVERED NUMEROUS EMPTY ZIP LOCK BAGS USED FOR PACKAGING IN THE KITCHEN CABINETS. ALREADY NOTED WAS 45 CALIBER AUTOMATIC PISTOL RECOVERED FROM PREVIOUSLY MENTIONED MOTOR VEHICLE OWNED/OPERATED BY ACCUSED. ALL EVIDENCE SECURED. SEARCH TERMINATED. APARTMENT SECURED BY SUPERINTENDANT OF BUILDING PRIOR TO DEPARTURE. ACCUSED TRANSPORTED TO HEADQUARTERS. VALTOX OF SAMPLE OF WHITE POWDER/CAKE SUBSTANCE PERFORMED BY DET. MERRITT PROVED POSITIVE REACTION TO COCAINE. ALL EVIDENCE REMANDED TO CUSTODY OF HPD PROPERTY ROOM. ACCUSED TRANSPORTED TO BOOKING FOR PROCESSING.

NOTE: ATF WILL PREPARE A FEDERAL FIREARMS PROSECUTION AGAINST CHANNER FOR BEING A FELON. THIS INVESTIGATION IS PART OF THE JAMACIAN TASK FORCE CASE# NE-CT-026.

AGENT MARKOWSKI CONTACTED COLT FIREARMS SECURITY AND DETERMINED THAT 45 CAL. AUTO WAS ROLL MARKED ON OR ABOUT FEBRUARY 29, 1988, and THERE IS NO RECORD OF THE FIREARM LEAVING THE FACTORY, AND THEREFOR PRESUMED STOLEN AT TIME OF THIS WRITING.

INVESTIGATING OFFICER: DET. MICHAEL PERODEAU    CODE 20508
ASSISTING OFFICER: DET. GREGORY MERRITT    CODE 79808

PAGE 2 OF 2 PAGES

HPD FORM # 77 REV. 3/84

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED
JUN 22 10 44 AM '98
U.S. DISTRICT COURT
NEW HAVEN, CONN.

CLAUDIOUS W. CHANNER,

    Petitioner,

    -vs-

UNITED STATES OF AMERICA,

    Respondent

Crim. No. 2:89CR91 (PCD)
Civil No. 3:96CV1863 (PCD)

### ORDER

The petitioner herein, Claudious Channer, was previously ordered to file a request to the Second Circuit Court of Appeals before his petition under 28 U.S.C. § 2255[1], filed in September 1996, could go forward. See Liriano v. United States, 95 F.3d 119 (2d Cir. 1996); Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), section 105 (amending 28 U.S.C. § 2255 for successive petitions).

On November 2, 1989, petitioner was indicted on three charges: possession of a weapon by a convicted felon, in violation of 18 U.S.C. § 922 (g); using a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. § 924 (c); and possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841 (a) (1). On January 9, 1990, petitioner pled guilty to the § 924 (c) count, which charged that "[w]hoever, during and in relation to any crime of violence or drug trafficking crime . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years." 18 U.S.C. § 924

---

[1] Petitioner had previously filed two writs of habeas corpus.

RECEIVED
JUL - 8 1998

(c). The remaining two counts were dismissed. Petitioner was sentenced to the mandatory five-year prison sentence required under the statute.

In <u>Bailey v. United States</u>, 516 U.S. 137, 116 S.Ct. 501 (1995), the Supreme Court held that a defendant cannot be convicted of "use" of a firearm under § 924 (c) unless he "actively employed" the weapon. 116 S.Ct. at 509. Petitioner's 2255 motion alleged that his conviction must be vacated based on <u>Bailey</u> in that he was "convicted under the wrong interpretation of 18 U.S.C. § 924 (c) (1). Petitioner was neither using or carrying a gun when he was arrested, nor was he in possession of a firearm."

While petitioner's motion was pending in the Court of Appeals, on January 21, 1998, the Court issued an order allowing petitioner to raise his claim under <u>Bailey v. United States</u>, 116 S.Ct. 51 (1995) pursuant to a writ of habeas corpus, 28 U.S.C. § 2241 (c) (3). See <u>Triestman v. United States</u>, 124 F.3d 361 (2d Cir. 1997) (holding that while relief to prisoner based on <u>Bailey</u> may no longer be available under amended 28 U.S.C. § 2255, claim may be brought under 28 U.S.C. § 2241). The government was ordered to respond to petitioner's renewed claim by May 6, 1998.

In its response, the government conceded that petitioner's guilty plea is now invalid under <u>Bailey</u>. (Resp. to April 1, 1998 Order to Show Cause at 6.) However, petitioner finished serving his federal sentence on this charge and was transferred to state custody on March 23, 1994 to begin serving a state sentence on unrelated convictions. (Id. at 4-6). Petitioner was not convicted of any other counts, thus resentencing is not possible. The government agrees that based on the circumstances, petitioner's conviction of violation of one count of 18 U.S.C. § 924 (c) should be vacated.

2

CONCLUSION

For all of the foregoing reasons, petitioner's motion under 28 U.S.C. § 2241 (docs. 35 and 47) is **granted**. It is hereby ordered that petitioner's judgment of conviction of violation of one count of 18 U.S.C. § 924 (c) (doc. 17) be **vacated**.

SO ORDERED.

Dated at New Haven, Connecticut, June 17, 1998.

                                                    Peter C. Dorsey
                                          United States District Judge

488

apartment on Wethersfield Avenue. They observed the accused attempting to enter a Nissan Pathfinder vehicle in that area and placing an object under the front driver's seat. The officers found a loaded Colt .45 automatic with a six-round clip under the driver's seat. They then went to the accused's apartment, along with agents from the Federal Government, the Alcohol Tobacco and Firearms Division, and found secreted in the bedroom two large Ziploc bags of cocaine and a Cobray (phonetic) M-11, nine millimeter automatic pistol with clip containing twelve rounds. That may well be the weapon that the defendant referred to, although he called it a Mack-10 (phonetic) during his testimony at the trial, when he indicated that he did in fact own a machine gun, I believe.

The defendant was arrested and charged with State offenses at that time. Subsequently, I had conversation with the United States Attorney's Office and on those facts, they indicted him on the weapons violation with a drug trafficking offense and he entered a plea of guilty to that offense and is serving a five-year Federal sentence for that.

I did indicate to the United States Attorney that since they have petit policy problems if I were to continue the prosecution of the drug

489

offenses, that I will at this time enter a nolle on all outstanding State charges in docket number 55430 on the basis of his conviction of related offenses in the United States District Court.

Additionally, there is another matter which I am going to enter a nolle in today because I think that this Court's sentence, whatever it may be, will be adequate to deal with the defendant's conduct and also, quite honestly, because there are some -- not witness cooperation problems but witness availability and location problems. That is a matter that appears at docket number 56144, State versus Claudios Channer, also known as Clifton Channer and that involves an allegation of robbery that is claimed to have occurred on November 7th of 1989, when an individual in the north end of Hartford on Garden Street was returning to her apartment and observed a number of black males standing in the parking lot. One of the -- there was another individual, an Aaron Pearson (phonetic) who was unlocking the front entrance door when this -- he claims that this defendant, who he knew by the street name of Bayling (phonetic), walked up behind him and put a gun to his head. He and a number of other Jamaicans then went into an apartment where a robbery purportedly took



UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

CLAUDIOUS CHANNER

V.

PAUL MURRAY, ET AL.

PRISONER
CASE NO. 3:00CV230 (SRU) (WIG)

### Scheduling Order

Pursuant to Rule 16(c) of the Federal Rules of Civil Procedure, it is hereby

ORDERED:

1. Defendant Blumenthal shall file any motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), or motion to dismiss as frivolous under Title 28 U.S.C. § 1915(e) or answer or other reply to the amended complaint within thirty days of the date of this order. **Failure to respond to the amended complaint in a timely manner will result in the entry of default for failure to plead.**

2. Discovery pursuant to the Federal Rules of Civil Procedure, Rules 26 through 37, shall be completed within four months (120 days) of the date of this order. Discovery requests need not be filed with the court.

3. All motions for summary judgment shall be filed within five months (150) days of the date of this order.

4. Pursuant to Local Civil Rule 9(a), a non-moving party must respond to a dispositive motion within 21 days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

SO ORDERED.

Dated at Bridgeport, Connecticut, this 28th day of June, 2001.

William I. Garfinkel
United States Magistrate Judge

# United States Court of Appeals

FOR THE ELEVENTH CIRCUIT

No. 95-8595
Non-Argument Calendar

District Court No. 1:93-cv-1425

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

JUN 12 1996

MIGUEL J. CORTEZ
CLERK

CLAUDIOUS CHANNER,

Plaintiff-Appellant,

versus

ANA WANGA, Mail Room Supervisor,
MR. STRUNK, Mail Supervisor,
D. SELTZ, Supervisor,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Northern District of Georgia

---

Before ANDERSON, EDMONDSON and BIRCH, Circuit Judges.

## JUDGMENT

This cause came to be heard on the transcript of the record from the United States District Court for the Northern District of Georgia, and was taken under submission by the Court upon the record and briefs on file, pursuant to Eleventh Circuit Rule 34-3;

UPON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the judgment of the said District Court in this cause be and the same is hereby VACATED; and that this cause be and the same is hereby REMANDED to said District Court for further proceedings in accordance with the opinion of this Court.

Entered: June 12, 1996
For the Court: Miguel J. Cortez, Clerk

By: /s/ Matt Dansban
Deputy Clerk

ISSUED AS MANDATE: 8/7/96

# Police

**CONTINUED FROM PAGE B1**

Klein said he also plans to notify his clients awaiting trial, who have been arrested by Sanzo and Ortiz, about the ongoing internal investigation. However, Klein said he doubts that the prosecutor's office will dismiss drug cases just because Sanzo and Ortiz were the investigating officers.

While Klein said no one can claim that all of Sanzo and Ortiz's cases are now tainted, defense lawyers Wesley Spears and William Gerace said they will argue that they are.

"All the cases are tainted," Spears said. "Usually these [types of cases involving officers under suspicion] go down the drain. How can you say they have credibility if they lie?"

Chief State's Attorney Christopher Morano and Hartford State's Attorney James Thomas said they will wait for Hartford's internal probe before they act.

Morano declined further comment.

Thomas said it would be up to Hartford police to determine whether criminal charges against the officers should be filed. "There is no reason for my office to investigate," said Thomas, adding he would not speculate on the larger impact of the probe on other illegal drug cases.

Tom Carson, the public information officer for the U.S. attorney's office, declined to comment.

Mayor Eddie A. Perez, who referred the original complaint filed by Woodard to the police department, said he was pleased that the department has aggressively investigated the complaint.

"I'm continually increasing my confidence in our ability to handle citizen complaints," Perez said Monday while campaigning for Sen. John Kerry in Orlando, Fla. "We're doing what we need to be doing to take these complaints seriously and deal with them in a timely fashion."

For years, Hartford police and its citizens review board have been slow in investigating complaints. Officials are reducing a backlog of old complaints, and a federal judge in July ordered the city to investigate new complaints within 30 days.

*Courant Staff Writer Mark Pazniokas contributed to this story.*

*A discussion of this story with Courant Staff Writer Tina A. Brown is scheduled to be shown on New England Cable News each hour today between 9 a.m. and noon.*

case is an isolated incident or whether all of Ortiz and Sanzo's cases are now tainted is the buzz among defense lawyers and their clients.

Defense lawyer Gerald Klein said, for example, he was preparing for a pretrial hearing on Monday morning when his client in the case called him to reiterate his innocence. He had told Klein before that Sanzo and Ortiz had fabricated evidence against him when they obtained a search warrant, Klein said.

"See I told you," Klein said his client told him.

Klein declined to name the client, but said that the prosecutor had offered his client a suspended sentence in the case, so the defense lawyer probably won't press it any further. But the issue has Klein considering how he can use the alleged corruption in other pending drug cases. "I'm going to check my files," he said. "I want to bring this up to the prosecutors to say these guys won't be credible."

THE HARTFORD COURANT • WEDNESDAY, FEBRUARY 11, 2004    B9

CONNECTICUT

# Criminal Inspector Sues Chief State's Attorney

By LYNNE TUOHY
COURANT STAFF WRITER

A veteran state criminal inspector who successfully sued former Chief State's Attorney John M. Bailey for violating his free speech rights filed a new lawsuit Tuesday, contending that Chief State's Attorney Christopher Morano has engaged in a yearlong campaign of retaliation against him.

Supervisory Inspector Gregory Dillon contends Morano has violated his civil rights by using his authority to demean, humiliate and punish Dillon for filing suit against Bailey in 1998. Dillon, in his new federal lawsuit, alleges that Morano:

■ Told Dillon — who expressed an interest in applying for the chief inspector job — that he was not going to fill it, then a week later filled the position with a Hartford inspector.

■ Failed to invite him to regularly scheduled meetings Morano held with other supervisory inspectors in the state Division of Criminal Justice.

■ Put him in charge of reorganizing the evidence room and keeping its records.

■ Downsized Dillon's staff in the Gang and Continuing Criminal Activities Bureau, usurped Dillon's jurisdiction by creating a new public integrity unit to investigate public corruption, then transferred him to the elder crimes unit of the division.

Dillon contends that Morano's actions were designed "to send a message to staff that [Dillon] was distavored by him and the agency, and thus should be shunned."

Morano, in a written statement, said Dillon's "allegations of retaliation for a matter that was resolved years ago have no basis in fact whatsoever."

"I am disappointed that he has chosen to bring this action, which will needlessly draw on the severely limited resources of the division [of criminal justice] and the state of Connecticut," Morano wrote.

Dillon rattled the criminal justice system eight years ago, first with his allegations that federal agents on a joint state-federal fugitive task force were fabricating information on arrest warrant affidavits. In response to Dillon's whistle-blowing, Dillon alleged in his 1998 lawsuit, Bailey disbanded the task force, reassigned Dillon, denied him a promotion and ordered him not to discuss his allegations.

A jury in 1999 found that Bailey had violated Dillon's First Amendment rights, and awarded him $2.7 million, mostly in punitive damages. Dillon a year later settled with the state for $1.5 million.

Morano was deputy chief state's attorney, and testified during the 1999 trial that he, not Bailey, was the moving force behind Dillon not getting the promotion, Dillon alleges in his new lawsuit.

Morano in October 2002 became acting chief state's attorney after Bailey became terminally ill. Bailey retired in December of that year and Morano was chosen from a field of candidates to serve out Bailey's term. Bailey died in 2003.

The division hired Dillon, a former FBI agent and police officer, as an inspector in 1990. Dillon said Tuesday he has tried to "shrug off" the alleged acts that form the basis of his lawsuit, but added, "It became obvious even to the most casual observer in the office that I have been targeted, and targeted unfairly."

Attorney Karen Lee Torre of New Haven, who represented Dillon in his successful suit against Bailey and who filed Tuesday's lawsuit, called Morano's stated concern for the limited resources of the state a "cheap comment". She noted that Morano, rather than being defended by the attorney general's office, has hired a private lawyer, Albert Zakarian, from the law firm of Day Berry & Howard.

# World Challenge To Dodd

By JACK DOLAN
COURANT STAFF WRITER

NEW LONDON — Lagging badly in the polls and trailing by more than $3 million in fund-raising, Republican Senate candidate Jack Orchulli launched his most aggressive attack so far against incumbent U.S. Sen. Christopher Dodd during a debate in New London Monday night.

Orchulli, a multimillionaire businessman running for his first public office, stressed his "real world" experience during his opening remarks in a clear effort to distinguish himself from Dodd, who is a career politician. "I know what it is to create jobs, I know what it is to compete in the global economy, because I've done it," Orchulli said.

When the questions began, whether they involved education, taxes, transportation or any other topic, Orchulli insisted that Dodd explain why he hadn't done more on the topic during his 30 years in Congress.

For his part, Dodd never even mentioned Orchulli's name. He only

PLEASE SEE DEBATE,

---

FRANCIS MILLER of Hamden, director of ConservArt, a restoration company, tamps lead into flaws in the bronze statue in Center Park in Manchester Monday as part of an approximately $14,000 restoration project funded by the town and the state. The 1876 statue is being restored for a rededication planned for next spring.

RICK HARTFORD / THE HARTFORD COURANT

# Defense Lawyers Question Officers' Credibility

By TINA A. BROWN
COURANT STAFF WRITER

Several local defense attorneys, experienced in representing clients charged with drug offenses in Hartford, started auditing their files Monday after news broke that a vice and narcotics supervisor and a detective are under investigation on suspicion of falsifying a search warrant application.

If the subjects of the police internal investigation — Sgt. Franco Sanzo and Det. Nathaniel Ortiz — arrested their clients in any pending cases, the lawyers said they plan to challenge the credibility of the officers' statements during negotiations with prosecutors.

Only one of the lawyers, James Brewer, called for a federal probe into whether the cases handled by the two officers are tainted.

"This investigation should go beyond internal affairs [in the Hartford Police Department]," he said. "This should be sent to a federal grand jury if they deprived people of their fundamental civil rights."

> "This should be sent to a federal grand jury if they deprived people of their fundamental civil rights."
>
> JAMES BREWER
> DEFENSE ATTORNEY

Police sources have identified Sanzo, who has worked in the vice and narcotics division for more than a decade, and Ortiz, who worked there for two to three years, as the subjects of the internal investigation. They could face disciplinary action if Police Chief Patrick J. Harnett concludes that they falsified a search warrant application approved by a state prosecutor and signed by a Hartford Superior Court judge in order to raid the home of Raynette Woodard, also known as Raynette Little.

After the search on Sept. 2, Woodard complained that the narcotics detectives trashed her house, stole her jewelry and money and did not have probable cause to search her Green Street home. Woodard and a friend, Lloyd McLaughlin, were charged with possession of a small amount of marijuana and an illegal gun.

A Superior Court judge dropped the charges against Woodard last week, and McLaughlin is due in court today. McLaughlin applied for the state's community service labor program, which means if he has a clean record, the felony charge could be dismissed after he performs community service, records show.

Police sources say that Ortiz and Sanzo were not truthful when, under oath, they swore that they saw Woodard's son, Michael Woodard, 22, selling drugs from 37 Green St. Michael Woodard was in jail at the time, and could not have been observed selling drugs.

Neither Ortiz nor Sanzo has spoken publicly about the case.

This is not the first time Sanzo has been accused of arresting a suspect without probable cause. In 1996, Superior Court Judge Joseph Q. Koletsky ruled that then-Det. Sanzo and Det. Richard Murzin arrested Edward Kirkland in 1993 without probable cause.

In that case, the judge said that a half-kilogram of cocaine could not be used as evidence against Kirkland because he found Kirkland more believable than the detectives. The officers said they followed Kirkland in his truck after they were tipped off that he was carrying a kilogram of cocaine. When they stopped him, the officers said, Kirkland got out of the truck and appeared to reach for a weapon when he was arrested and the cocaine was found.

Kirkland said, however, that the officers approached his vehicle with their guns drawn and he was forced to get out of the vehicle. He said the bag of cocaine ripped as he was getting out of the truck. He said the detectives had no cause to stop or arrest him before the cocaine was found.

Harnett declined to comment on the ongoing investigation but said that the department is committed to the highest integrity and he has confidence in the commander of internal affairs.

Since the latest investigation became public on Monday, the question of whether the allegation in the Woodard

PLEASE SEE POLICE, PAGE B7

---

Researchers See Growth

For Mo...
I...

TOWN NEWS
INDEX ........ B1-B3, B7
                 B2, B3