# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

FILED

2005 JAN 27 P 4: 35

U.S. DISTRICT COURT
BRIDGEPORT, CONN

**CLAUDIOUS W. CHANNER**

      Plaintiff,

VS.    Civil No. 3: 00cv230 ( SRU )

**RICHARD BLUMENTAL;**
**JANET RENO, CITY OF HARTFORD,**
**JAMES MARKOWSKI, DETECTIVE**
**PERODEAU, DETECTIVE MERRITT,**
**DETECTIVE WOLF, DETECTIVE**
**ELLIS AND SERGEANT CAGIANELLO, ET AL**

      Defendants.

_____/

### PLAINTIFF'S OPPOSITION TO THE DEFENDANTS SUMMARY JUDGEMENT MOTION

NOW COMES THE above named pro-se plaintiff who is presently incarcerated and acting without the assistance of counsel, respectfully move this Honorable Court to deny the defendant City Motion for Summary Judgement because there are genuine issues of material facts which warrant a jury trial.

### STATEMENTS OF THE CASE

On march 2, 1989 while the Plaintiff was walking toward his Nissan Parthfinder Jeep, the plaintiff observe approximately three police men running toward him with their guns drawn. The officers arrested the Plaintiff in the parking lot of 57 Weathersfield Ave. and brought the Plaintiff to Apartment G-3 of the Apartment complex and place him to sit down on a couch. The officers search the Apartment for approximately thirty minutes before they found a weapon and ten ounce of Narcotic. Immediately after finding the weapon and the narcotic, the defendants began to beat the Plaintiff with their guns and their fist. While the Plaintiff was brought inside the apartment, some of the officers stayed outside searching the Plaintiff's parthfinder and a Nissan Maxima. The defendants seized a license plate from the Plaintiff Maxima and some documents.

1

The defendants seized a gun from the back panel of the parthfinder Jeep. The defendants wrote in their police report that they saw the Plaintiff's placing the weapon under the front drivers seat, as they were approaching the parking lot. The defendants claim that the Plaintiff's confessed to the weapon and the narcotic that was found inside the Apartment.

Plaintiff did admit that he purchase the weapon and the narcotic but only after the police officers beat the plaintiff for approximately thirty minutes. The officers did not give an account of where they were inside 57 Weathersfield Ave. and how much minutes they spend at that location and what they were doing. There is no account of the officers searching the Plaintiff's Nissan Maxima and what was taken from it. There was no mention of the defendants using excessive force upon the Plaintiff.

There was no reason given by the defendants as to why they initially arrested the Plaintiff. 57 weathersfield Ave. Parking lot was not named in the defendants search warrant. Where the Plaintiff was arrested is a different location from the location that was named in the defendants search warrant. The Plaintiff was arrested before any narcotic was discovered. The alleged confession was obtain from the Plaintiff before the Plaintiff's rights were read to him.

## PLAINTIFF OPPOSITION TO THE DEFENDANT ARGUMENT

On page sixteen of the city summary judgement motion, the city asserted that false arrest or false imprisonment accures at the same time March 2, 1989. Contrary to the above claim the city also claim that " if the Plaintiff's claim would have undermined the validity of any potential conviction in the criminal proceeding against the Plaintiff, then the date would be delayed. See Covington v. City of New York, 171 F.3d 117, 119 (2nd Cir. 1999) and Heck v. Humprhey, 512 U.S 477, 114 SCt 2364 (1994).

A **42 U.S.C 1983** cause of action for damage attributable to an unconstitutional conviction or sentence does not acquire until June 17, 1998, when the Plaintiff's conviction and sentence were invalidated. Any challenge to the Plaintiff's arrest would call into question the Plaintiff's conviction and sentence.

Attached here to is a copy of the Hartford police report of march 2, 1989 Exhibit "1" there the defendants city police officers asserted that they were armed with a search and seizure warrant to search Plaintiff's apartment which is located at Apartment G-3 of Weathersfield Ave. Hartford, Ct. The defendant city asserted that as they were entering the drive way of 57 weathersfield Ave. Parking lot, they observe the plaintiff attempting to enter his vehicle.

21

The defendant City indicated that they ordered the Plaintiff's to exited his vehicle at gun point, at which time they observed the Plaintiff's placing an object under the front seat of the vehicle that he was attempting to enter. The defendant City asserted that the object that he observed the plaintiff's attempting to conceal turn out to be a loaded Colt 45 hand gun. This story was fabricated by the defendants to justify their search. The alleged weapon was hidden in the back compartment of the jeep. The Plaintiff had nothing whatsoever in his hand when he was arrested.

In 1998 Inspector Gregory Dillon made an allegation that the Hartford Police Task Force were fabricating information to obtain search and seizure warrant, and arrest warrant for suspects in the Hartford area. The same Task Force who arrested the Plaintiff in 1989. While this memorandum were being drafted, two Hartford Police were arrested for fabricating information to a judge to obtain a search and seizure warrant.

The names of the officers who were fabricating evidence in 1989 to 1998 was not publish. Inspector Dillon sued the Hartford State Attorney and the city for violation of his First Amendment Rights. The issues of who were fabricating information to obtain warrants were not addressed by the city or any one who is in an official capacity to cure the unconstitutional custom and practice that has been plaguing the city and its police Department.

The alleged unconstitutional practice continue to the present time where a woman was arrested on false pretence that her son was selling drugs out of her house. It was later discovered that the woman son is in prison at the time that the police officers are declaring that they saw him on the street of Hartford selling drugs. This is a continuation of the city failure to correct what it knows or should have known for a long time.

In the instant case the weapon was not in plain view. The weapon was only discovered after the Plaintiff was place under arrest and brought to his residence. The Officers search two vehicle that were park inside 57 weathersfield Ave. that were not named in the search warrant. Nor were there probable cause to search these two vehicle . See **Boyd v. City of New York,** 336 F. 3d 72 (2nd Cir. 2003), **Ricciuti v. New York City, Transit Auth,** 124 F. 3d 123, 130 (2nd Cir. 1997).

3

There was no probable cause to arrest the Plaintiff. The police report did not establish a cause for their arrest. Observing an innocent citizen walking toward his vehicle does not establish a reason to arrest the Plaintiff. See Ried v. Georgia, 448 U.S 438, 65 LED. 2d 890, 100 SCt 2757 (1980).

Courts must be especially cautious when the evidence that is alleged to establish probable cause is entirely consistent with innocent behavior. A police officer may not exceed the limit of a search warrant by searching areas dwelling outside of the scope of the warrant. See State v. Reddick, 207 Conn. 323 (1988).

In the instant case the officer search the Plaintiff's vehicle which was parked outside the scope of the defendants search and seizure warrant. The plaintiff jeep was clearly outside of the officers search and seizure warrant. The defendants City was a clear violation of the Plaintiff Fourth Amendment Rights.

A search of a multiple unit dueling such as 57 Weathersfield Ave. Apt G-3 should at the very least contain the correct address and the named of the person who's Apartment to be search. See. **State v. Buddhu,** 264 Conn. 449 (2003). Armed with a search and seizure warrant to search 57 weathersfield Ave. Apt G-3 was insufficient to justify the arresting of the Plaintiff who was attempting to enter a vehicle that was parked at a locating that was not mention in the search warrant. See **Levelo v. Lampina,** 258 F.3d 156 (3rd. Cir. 2001)

A State search and seizure warrant must conform to the Federal Constitution requirements, whether or not they are Federal in character. See **United States v. Dozal,** 787 (10th Cir. 1999). The City did not establish probable cause to arrest or to search the Plaintiff's vehicle that was park in the parking lot. Furthermore, there was no reason to conduct such a search. See. **California v. Acevedo,** 500 U.S 565, 114 LEd.2d 619, 111 SCt 1982 (1991). The officers own declaration declare that they arrested the Plaintiff as he was walking toward his vehicle.

The defendants City claimed that the existence of probable cause is a complete bar to claim of false imprisonment. See. **Weyant v. Oakst,** 101 F3d 845, 852 (2nd Cir. 1996). The defendant City claim that the plaintiff admitted to the alleged criminal conducts and incarceration. The City also asserted that Plaintiff never challenge the validity of the warrant or the search.

While this statement is true. The defendant City has made it an important subject in this case and therefore, Plaintiff must respond as he see fit. To succeed on a claim of false imprisonment the Plaintiff's must show that the prosecution was initiated against him without probable cause and that the prosecution was terminated in the plaintiff's favor. See. **Boyd v. City of New York,** 336 F.3d 72 (2nd Cir. 2003).

The presumption is rebuttable and may be overcome by evidence establishing that the police witnesses have not made a complete and full statement of the facts... that they have misrepresented or falsified evidence ... or other wise acted in bad faith. Here the defendant City claimed that he observed a weapon in plain view which was false. The defendant City claim that he observed the Plaintiff's exchanging white powder for US currency which was also false.

The City fabricated a made believe information to justify the search and seizure. The defendant cannot produce an informant who will testify that he was inside the Plaintiff's Apartment observing the Plaintiff's selling narcotic. The City warrant failed to establish the credibility of the alleged informer and his reliability. See **Franks v. Delaware**, 438 U.S 154 (1978). The City claimed that he observed well known narcotic dealers entering the plaintiff Apartment and stay for a few minutes and then leave. The City and it's officers use this observation to obtain a search and seizure warrant to search the Plaintiff's Apartment. These facts are consistent with innocent acts.

The City knew that it's officers were fabricating information to obtain search and seizure warrant for a long time but does nothing to crub the unconstitutional action of its police officers. The police officers unconstitutional action is not an isolated incident. It is a continuous practice that the City knew of or should have known of.

The City was informed of the practice several time by citizen and it owen officers but the City refused to address the unconstitutional practices. As we speak , two officers on pending charges for fabricating information to support a search and seizure warrant. One of the officer has been on the force for twenty years and the other eight years.

The officers did not create the act of fabrication to obtain a search and seizure warrant. This is a practice they learn inside the Police Department. This is not the first time that the City Office Officers have been accused of fabricating evidence. This might be the first time that the mayor took it upon himself to call for an investigation. You can trace this problem as far back as to 1988.

Every time there is an accusation on a police officer, the officer retire and the City failed to rectify the underlining problems within the Police Department. So the problem continue until the next citizen is harm by the same custom and practice.

5

For example, in 1998 Inspector Gregory Dillon filed a civil rights law suit against chief State Attorney John Bailey, alleging that certain State and federal officers were engaged in the practice of fabricating evidence and information to obtain fugitive warrant, search and seizure warrant. The officers who were engaging in the practice were not named publicly and no one were fired or arrested for the allegation made by Inspector Dillon.

The City did not move to made the names of the officers who were fabricating information on its citizens public or to launch an investigation into Inspector Dillon accusation. Instead the City and it actors pursued a line of cover up and retaliation against Inspector Dillon. From this behavior one can infer that the city cover up the names of the officers who Inspector Dillon claimed fabricated information to obtain search and seizure warrants and fugitive warrants.

The revelation of the names of the alleged officers would have cause a lot of defendants to challenge their arrest and conviction, due to the officers misconduct. The recent arrest of two Hartford Police officers in relevant to the issues here because it is a continue custom and practice by the Hartford Police Department and its officers to fabricate information to obtain a search and seizure warrant.

There was no discovery given in this case and the question as to whether one of the officers who made the arrest in this case named was on the list as one of the officers who were fabricating information to obtain a search and seizure warrant is yet to be establish. There are genuine issue of material facts in this case that warrant a trial by a jury.

## OPPOSITION TO THE CITY'S STATUTE OF LIMITATION ISSUE

The City raised a claim of statute of limitation. The City claimed that the three years statute of limitation that govern a 1983 law suit in the state of Connecticut began to run on march 2, 1989 when the Plaintiff was arrested. The City of Hartford cited **Covington v. City of New York,** 171 F. 3d 117, 119 (2nd Cir. 1999) and **Heck v. Humprhey,** 512 U.S 477, 114 Sct 2364 (1994). The City conceded that had the Plaintiff's filed a 1983 claim for money damages attributable to his federal conviction before it was vacated, **Heck** would have precluded him from commencing such an action. See Defendants Summary Judgement page 17.

The City cited Covington v. City of New York, which shepardise to Gauger v Hendle, 239 F. 3d 354, (7th Cir. 2003) there the Seventh Circuit articulated that the defendant made incriminating statement against himself after he was unconstitutionally arrested. Here the Plaintiff made a similar incriminated statement after he was unconstitutionally arrested.

Under the fruit of the poison tree doctrine, evidence gather as a result of an unconstitutional search and seizure is inadmissable in a court of law. A motion to suppress the evidence gather at the Plaintiff's Apartment in March of 1989 was filed but late withdrawn by Plaintiff Attorney for the acceptance of a guilty plea. The United States Supreme Court in **Wong sun v. United States,** 471 U.S 484 83 SCt 407, 9 LEd. 2d 441, (1963) articulated the following: (A) Statement that was the fruit of a false arrest is inadmissable. See **Tayor v. Alabama,** 457 U.S 687, 102 SCt 2664, 73 LEd.2d 314 (1982), possession of a warrant to search a particular premises, at the time of the execution of the search. See **Leveto v. Campina,** 258 F.3d 156 (3rd Cir. 2001).

Using the City employees own words, you may infer that the police officers saw the Plaintiff's attempting to enter his vehicle as they were approaching the location. The defendant asserted that they immediately draw their gun and took the Plaintiff into custody and proceed to the Plaintiff's Apartment to search for the items named in the search warrant. A search and seizure warrant is totally different from an arrest warrant. Under the Fourth Amendment to the United States Constitution, a police officer is prohibited from running upon a citizen and arresting him without probable cause.

In **Michigan v. Summers,** 452 U.S 692, 101 SCt 2587, 69 LEd.2d 340 (1981), the defendant was at his front door exiting his residency when the police arrived and ask him to get back inside. In the instant case the Plaintiff was out side of the area designated to be search when the police arrive. The police officers arrested the Plaintiff and brought him to the area designated to be search.

In the **Michigan v. Summers** case the office detained the suspect and then conducted their search. In the instant case the police officers arrested the Plaintiff and informed him that they were arresting him for his safety. In addition, the defendant arrested the Plaintiff and conducted a search of the Plaintiff's vehicle that were parked in the parking lot.

There is no mention of a Nissan Maxima that was search by the defendant. There was no reason given to search the Plaintiff's vehicles or the seizure of the items that were taken from them. See **Dunway v. New York,** 60 LEd. 2d 824 (1972). The defendant City of Hartford claimed that the Plaintiff's admitted to possession of the firearm and the narcotic that were discovered from the apartment. This should not be a justification to warrant probable cause to arrest the Plaintiff. As stated earlier herein, a confession that is the fruit of an illegal search is inadmissable. See **Wong Sun v. United States,** 371 U.S 471 (1963). The City police report made it clear that they arrested the Plaintiff while he was attempting to enter his vehicle. For example, in 1998 Inspector Gregory Dillon filed a civil rights law suit against chief State Attorney John Bailey, alleging that certain State and federal officers were engaged in the practice of fabricating evidence and information to obtain fugitive warrant, search and seizure warrant. The officers who were engaging in the practice were not named publicly and no one were fired or arrested for the allegation made by Inspector Dillon.

    The City did not move to made the names of the officers who were fabricating information on its citizens public or to launch an investigation into Inspector Dillon accusation. Instead the City and it actors pursued a line of cover up and retaliation against Inspector Dillon. From this behavior one can infer that the city cover up the names of the officers who Inspector Dillon claimed fabricated information to obtain search and seizure warrants and fugitive warrants.

    The revelation of the names of the alleged officers would have cause a lot of defendants to challenge their arrest and conviction , due to the officers misconduct. The recent arrest of two Hartford Police officers in relevant to the issues here because it is a continue custom and practice by the Hartford Police Department and its officers to fabricate information to obtain a search and seizure warrant.

    There was no discovery given in this case and the question as to whether one of the officers who made the arrest in this case named was on the list as one of the officers who were fabricating information to obtain a search and seizure warrant is yet to be establish. There are genuine issue of material facts in this case that warrant a trial by a jury.

There is no suggestion that the police officers had any kind of articulated suspicion to approach the Plaintiff who was attempting to enter his vehicle. According to the City own statements, they saw the Plaintiff attempting to enter his vehicle and we call out to him to freeze at gun point. While we had him at gun point, we observe the Plaintiff trying to hide a weapon under the front seat of his vehicle. This story look credible on paper to justify the officers probable cause to search the Plaintiff cars and seized items from the Plaintiff's vehicle.

Nevertheless, in a real life situation, the officers story would not hold up. We all know that if a Hartford police Officer call out to a suspect to freeze and he turn around with a gun in his hand, he has a ninety percent chance of getting kill. There is a lot of unanswered question as to where the defendant asserted that the Plaintiff's pull the gun from while he was at gun point.

The defendant did not claim that they observe the Plaintiff with a gun in his hand while he was walking toward his vehicle or that he pull a gun from some where inside the vehicle. When the City officers were fabricating the alleged probable cause, they did not think of these question. They tried to full in all the details but left out some important facts that cannot be address by Summary Judgement.

There is a genuine issue of material fact as to whether the City had probable cause to arrest the Plaintiff initially. This is surely a question for the Jury and no for this court. When the issue of probable cause is raised, that issue provide a genuine issue of material fact which warrant a jury trial. The Connecticut Constitution offer more protection to its citizens than the Federal Constitution.

In the instant case the Plaintiff was arrested under the protection of the State Constitution which award the Plaintiff more protection against an illegal search and seizure. See **State v. Wilkins,** 240 Conn. 489, 505 692 A.2d 1233 (1997).

This case the court may infer that the state should provide more protection from officers running upon its citizens with guns drawn and kidnapping the Plaintiff from the street of Hartford and carrying him to another location to conduct their search. An arrest warrant is different from a search and seizure warrant.

An arrest warrant is a warrant issued only on probable cause, directing to a law enforcement officer to arrest and bring a person to court. While a search and seizure warrant is a written order authorizing a law enforcement officer to conduct a search at a specific place and time. This Plaintiff was not evidence at the point when he was arrested.

9

Arresting the Plaintiff before any drugs or weapon were discovered and taken the Plaintiff to the location where they were conducting their search is a violation of the Plaintiff's Fourth Amendment Rights to the United States Constitution. There is no justification for alleged violation of the Plaintiff's rights. There was no exigent circumstance to warrant the defendants action. See **Boyd v. New York,** 336 F.3d 72 (2nd Cir. 2003). The suppression of the evidence would have shown a bad faith.

## **OPPOSITION TO DEFENDANT RES. JUDICATA**

If the defendants have a problem with the courts decision. They are entitled to an appeal. See Semteck Int'L Inc v. Lockheed Martin Coup. 531 U.S 497, 502 (2001). Marvel Characters INC, v. Simon, 310 F3d 280, 288 (2nd Cir. 2002). Whether or not the first judgement will have preclusive effect depends in part on whether the same transaction or series of transaction is at issue, whether the same evidence is needed to support both claims and whether the facts essential to the second were present in the first.

(1) The issue of false imprisonment arise after the Plaintiff sentence was vacated on June 17, 1998, and could not have been raised before then. Wherefore, rejudicata does not apply to the issue of false imprisonment. Asserted here. See Commissioner v. Sunnen, 333 U.S 591, 597, 68 SCt 715, 719 92 LEd 2d 898 (1948), Cromwell v. County, 94 U.S 351, 352, 24 LEd. 195 (1877) and Interoceanied Coup. v. Sound Pilots Inc, 107 F3d 86 (2nd Cir. 1997). The false imprisonment issue was not raised in any other proceeding and could not have been raise before now. See Allen v. MC. Curry 449 U.S 90, 94 (1980). The defendants filed to raise their Res.Judicata claim in their motion to dismiss. Rule 12 (b) (6).

The defendants Res-Judicata claim is doubtful on its face. The defendant City claim that it is unclear if the City was named as a party to the 1992 law suit. Nevertheless, the City claim that the Plaintiff should have raised his false imprisonment claim that did not arise until June 17, 1998. This court already ruled that there is no Res-judicata on collateral estoppel issue here on the assertion of false imprisonment. These issues were address in the court September 26, 2003 this court articulated the following in its ruling: " Because the Supreme Court did not issue its decision in Bailey until 1995 and Judge dorsey did not vacated the plaintiff's Federal conviction until 1998, the Plaintiff could not possibly have raised this false imprisonment claim in the 1992 lawsuit." This claim is repetitive and should already concluded that the false imprisonment assertion could not have been raised before June 17 1998.

10

## CLAIMS OF FRAUDULENT CONCEALMENT

  The City failed to disclose its documents to show how it does business when it is sued by a citizen for false imprisonment and excessive force. It is difficult to prove these issue without the record that is own by the Defendants. The City always denied prisoners request for discoveries to defeat their claims. To show Fraudulent concealment the defendants should allow discovery of its records to show how it does business with its citizens. The Plaintiff was place in prison and denied adequate access to a law library by the defendants.

  Now the defendant claim that the Plaintiff should have known of the court decision and take action within three years, of the court ruling. The Plaintiff believe the defendant should have notified him of the changes of law.

  The court may take Judicial notice of the City advising the court on changes of law, during the pending of several cases before this court. Those practices should have been applied in the Plaintiff case but was not applied because the defendants wanted to defeat the plaintiff by any means necessary. For those reason summary judgement should not be in this case.

Respectfully Submitted

Claudious W. Channer
P.O. Box 100
Somers, CT 06071